**RICKEY IVIE (S.B.N.: 76864)**
rivie@imwlaw.com
**DAVIDA M. FRIEMAN (S.B.N.: 232096)**
dfrieman@imwlaw.com
**ANTONIO K. KIZZIE (S.B.N.: 279719)**
akizzie@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS, APLC**
444 S. Flower Street, 18th Floor
Los Angeles, CA 90017-2919
Tel.   (213) 489-0028
Fax    (213) 489-0552
Attorneys for Defendants, **COUNTY OF LOS ANGELES, DEPUTY JONATHAN PAWLUK, AND DEPUTY ADRIAN DE CASAS**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER BLANCHARD, as guardian ad litem for minor plaintiff I.C.W., successor in interest to Joseph Alan Wear, and DONNELLE WEAR, an individual,<br><br>     *Plaintiffs,*<br><br>  vs.<br><br>THE UNITED STATES OF AMERICA, et.al.,<br><br>     *Defendants.* | Case No.: 8:19-CV-02438-JVS (DFM)<br><br>*Consolidated with*<br><br>Case No.: 8:20-CV-00459-JVS-(DFM)<br><br>**DEFENDANT COUNTY OF LOS ANGELES' FIRST AMENDED MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, ADJUDICATION;MEMORANDUM OF POINTS AND AUTHORITIES;DECLARATION OF ANTONIO K. KIZZIE**<br><br>[*Filed concurrently with Defendants' First Amended Separate Statement of Uncontroverted Material Facts; Defendants' Proposed Order re: Summary Judgment/Adjudication; Declarations and Exhibits in Support Thereof; Daubert Motion, and Proposed Order re: Daubert Motion*]<br><br>Date:   January 31, 2022<br>Time:   1:30 p.m.<br>Ctrm:   10C |

**TO THE HONORABLE COURT, PLAINTIFFS, AND TO PLAINTIFF'S ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on January 31, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable James V. Selna, United States District Court Judge, in Courtroom 10C of the above-entitled court located at the Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA, 92701, Courtroom 10C, 10th Floor, Defendant COUNTY OF LOS ANGELES (hereinafter "COUNTY"), DEPUTY ADRIAN DE CASAS (hereinafter "Deputy De Casas"), and DEPUTY JONATHAN PAWLUK (hereinafter "Deputy Pawluk") (collectively, "Defendants") will and hereby do respectfully move this Court for an order granting Defendants' First Amended Motion for Summary Judgment against Plaintiffs I.C.W., et.al. ("Plaintiffs") below causes of action on the following grounds:

1.     **First Cause of Action for Unreasonable Search and Seizure (42 U.S.C. §1983)- Excessive Force-** Defendants are entitled to summary judgment or, in the alternative, adjudication or qualified immunity against Plaintiff's First Cause of Action for Unreasonable Search and Seizure- Excessive Force (42 U.S.C. §1983) because Defendants' use of *de minimus* force against Mr. Joseph Alan Wear ("Mr. Wear" or "Decedent") of helping pull his arms behind his back for handcuffing was objectively reasonable under the totality of the circumstances, and/or the law was not clearly established to where every reasonable officer under the circumstances facing Defendants would know Defendants' conduct to be unlawful because Defendants were informed and observed Mr. Wear actively resisting U.S. Postal Service Officers efforts to handcuff Mr. Wear near an elementary school as children were being let out to their parents. Further, there is no evidence that Defendants' actions directly and proximately caused Mr. Wear's death from a methamphetamine overdose to any reasonable medical probability.

2.      **Second Cause of Action for Substantive Due Process (42 U.S.C. §1983)- Deprivation of Familial Relations** Defendants are entitled to summary judgment or, in the alternative, adjudication or qualified immunity against Plaintiff's Second Cause of Action for Substantive Due Process- (42 U.S.C. §1983) because Defendants' use of *de minimus* force against Mr. Joseph Alan Wear ("Mr. Wear" or "Decedent") of helping pull his arms behind his back for handcuffing was objectively reasonable under the totality of the circumstances, and/or the law was not clearly established to where every reasonable officer under the circumstances facing Defendants would know Defendants' conduct to be unlawful because Defendants were informed and observed Mr. Wear actively resisting U.S. Postal Service Officers efforts to handcuff Mr. Wear near an elementary school as children were being let out to their parents. Further, there is no evidence that Defendants' actions directly and proximately caused Mr. Wear's death from a methamphetamine overdose to any reasonable medical probability.

3.      **Third Cause of Action for Wrongful Death-** Defendants are entitled to summary judgment or, in the alternative, adjudication against Plaintiff's Third Cause of Action for Wrongful Death (assuming it survives dismissal) because Defendants' use of *de minimus* force against Mr. Joseph Alan Wear ("Mr. Wear" or "Decedent") of helping pull his arms behind his back for handcuffing was objectively reasonable under the totality of the circumstances. Further, there is no evidence that Defendants' actions directly and proximately caused Mr. Wear's death from a methamphetamine overdose to any reasonable medical probability.

4.      **Fourth Cause of Action for Violation of California Civil Code 52.1 ("The Bane Act")-** Defendants are entitled to summary judgment or, in the alternative, adjudication against Plaintiff's Fourth Cause of Action for Violation of California Civil Code 52.1 ("The Bane Act") because Defendants' use of *de minimus* force against Mr. Joseph Alan Wear ("Mr. Wear" or "Decedent") of helping pull his arms behind his back for handcuffing was objectively reasonable

under the totality of the circumstances. Further, there is no evidence that Defendants' actions directly and proximately caused Mr. Wear's death from a methamphetamine overdose to any reasonable medical probability.

5.    **Fifth Cause of Action for Battery-** Defendants are entitled to summary judgment or, in the alternative, adjudication against Plaintiff's Fifth Cause of Action for Battery because Defendants' use of *de minimus* force against Mr. Joseph Alan Wear ("Mr. Wear" or "Decedent") of helping pull his arms behind his back for handcuffing was objectively reasonable under the totality of the circumstances. Further, there is no evidence that Defendants' actions directly and proximately caused Mr. Wear's death from a methamphetamine overdose to any reasonable medical probability.

6.    **Sixth Cause of Action for Negligence-** Defendants are entitled to summary judgment or, in the alternative, adjudication against Plaintiff's Sixth Cause of Action for Negligence (assuming it survives dismissal) because Defendants' use of *de minimus* force against Mr. Joseph Alan Wear ("Mr. Wear" or "Decedent") of helping pull his arms behind his back for handcuffing was objectively reasonable under the totality of the circumstances. Further, there is no evidence that Defendants' actions directly and proximately caused Mr. Wear's death from a methamphetamine overdose to any reasonable medical probability.

**Meet and Confer Efforts-** This Motion is made following original telephonic meet and confer efforts on the substance of the instant motion due to the COVID-19 pandemic on January 25, 28, 2021, and again informally and electronically on December 8, 2021 pursuant to Local Rule 7-3. Plaintiffs will oppose Defendants' motion.

This motion shall be based upon this notice of motion, the motion for summary judgment and or adjudication, the accompanying memorandum of points and authorities, the attached Declarations, the attached exhibits, Defendants Separate Statement of Uncontroverted Facts, the pleadings and papers on file

herein, and such written material and oral argument as may be presented at the hearing of this motion.

Dated:  December 13, 2021

**IVIE McNEILL WYATT PURCELL & DIGGS, APLC**

**By:**   */s/ Antonio K. Kizzie*
**RICKEY IVIE**
**DAVIDA M. FRIEMAN**
**ANTONIO K. KIZZIE**
Attorneys for Defendants,
County of Los Angeles, Deputy
Jonathan Pawluk, and Deputy Adrian
De Casas

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ..............................1

I.     INTRODUCTION ...................................................................1

II.    STANDARD OF REVIEW FOR A F.R.C.P. RULE 56(a) MOTION.........2

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ......................3

IV.    ARGUMENT ......................................................................13

      A.    DEFENDANT ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW WAS NOT "CLEARLY ESTABLISHED" ...............................................................13

            1.    DISCUSSION .....................................................14

      B.    DEFENDANTS ARE ENTITILED TO SUMMARY JUDGMENT ....................................................................16

            1.    LEGAL STANDARD 42 U.S.C. §1983- NON-DEADLY FORCE ......................................................16

            2.    LEGAL STANDARD FOR SUBSTANTIVE DUE PROCESS §1983 ...................................................18

            3.    LEGAL STANDARD FOR BATTERY .......................19

            4.    LEGAL STANDARD FOR NEGLIGENCE ...................19

             5.    LEGAL STANDARD FOR THE BANE ACT ................20

      C.    DISCUSSION ...................................................20

            1.    TYPE AND AMOUNT OF FORCE INFLICTED ...........20

            2.    IMPORTANCE OF GOVERNMENT INTERESTS AT STAKE .......................................................21

3.   BALANCE BETWEEN 'THE GRAVITY OF THE
     INTRUSION ON THE INDIVIDUAL' AND 'THE
     GOVENRMENT'S NEED FOR THAT INTRUSION  …….22

4.   PLAINTIFF CANNOT PROVE THAT DEFENDANT
     PAWLUCK'S CAUSED MR. WEAR'S
     DEATH…………………………………………...……….23

5.   PLAINTIFF'S SUBSTANTIVE DUE PROCESS, BATTERY,
     NEGLIGENCE, AND BANE ACT CLAIMS FAIL ……….23

V.   CONCLUSION …………………………………………...25

DECLARATION OF ANTONIO K. KIZZIE ……………………………..26

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aguilar v. Atlantic Richfield Co.*
(2001) 25 Cal.4th 826, 857 .................................................................. 23

*AIG, Inc. v. American International Bank*,
926 F.2d 829, 833, 836-37(9th Cir. 1991) ............................................ 2

*Allen v. City of Los Angeles*,
66 F.3d 1052, 1056 (9th Cir. 1995) ............................. 16, 18, 21, 22, 24

*Anderson v. Creighton*,
483 U.S. 635, 640 (1987) ..................................................................... 14

*Ashcroft v. al-Kidd*,
563 U.S. 731, 741 (2011) ..................................................................... 14

*Atwater v. City of Lago Vista*,
532 U.S. 318, 354 (2001) ..................................................................... 16

*Avina v. United States*,
681 F.3d 1127, 1131 (9th Cir. 2012) .............................................. 19, 24

*Bhan v. NMEHosps., Inc.*,
929 F.2d 1404, 1409 (9th Cir. 1991) ..................................................... 2

*Billington v. Smith*,
292 F.3d 1177, 1188-89 (9th Cir. 2002) .............................................. 18

*Brosseau v. Haugen*,
543 U.S. 194, 198 (2004) ..................................................................... 14

*Brown v. Ransweiler* (2009)
171 Cal.App.4th 516, 537–538 ................................................. 19, 20, 24

*Camuglia v. City of Albuquerque*,
448 F.3d 1214, 1222 (10th Cir. 2006) ............................................ 18, 24

*Celotex Corp. v. Catrett*
477 U S. 317, 323 (1986) ....................................................................... 2

*Chaudry v. Cty. of Los Angeles*,
751 F.3d 1096, 1105-1106 (9th Cir. 2014) ...................................................... 20, 24

*City of Vernon v. So. Cal.Edison Co.*,
955 F.2d 1361, 1369 (9th Cir. 1992) ..................................................................... 2

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833, 847 n.8 (1998)............................................................................... 18

*Cornell v. City & Cty. of S.F.*,
17 Cal. App. 5th 766, 801–02 (2017) ............................................................ 20, 24

*D.C. v. Wesby*, 138 S.
Ct. 577, 589-90 (2018)......................................................................................... 14

*Davis v. Adamson*,
290 F. App'x 35, 37 (9th Cir. 2008)............................................................... 16, 21

*Edson v. City of Anaheim*,
63 Cal. App. 4th 1269, 1273, (1998) .......................................................... 19, 20, 24

*Enzo Biochem, Inc. v. Applera Corp.*
(Fed. Cir. 2010) 599 F3d 1325, 1337 ..................................................................... 3

*Fayle v. Stapley*,
607 F.2d 858, 862 (9th Cir.1979) ......................................................................... 15

*FDIC v. Henderson*,
940 F.2d 465, 474 (9th Cir. 1991) ....................................................................... 18

*Fogel v. Collins*,
531 F.3d 824, 833 (9th Cir. 2008)........................................................................ 14

*Frederick S. Wyle Professional Corp. v. Texaco, Inc.*,
764 F.2d 604, 608 (9th Cir. 1985) ......................................................................... 3

*Gantt v. City of Los Angeles*
(9th Cir.2013) 717 F.3d 702, 707–08 ................................................................... 18

*Gonzalez v. City of Anaheim*,
747 F.3d 789, 813 (9th Cir. 2014) .................................................................. 17, 20

*Graham v. Connor*,
490 U.S. 386, 396 (1989) ........................................................ 15, 16, 19, 21, 22, 24

*Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982) ........................................................................... 13

*Hayes v. Cty. of San Diego*,
57 Cal. 4th 622, 632 (2013 .................................................................... 19, 24

*Inouye v. Kemna*,
504 F.3d 705, 712 (9th Cir. 2007) ............................................................. 14

*Jennings v. Palomar Pomerado Health Sys., Inc.*,
114 Cal. App. 4th 1108, 1118 (2003) .......................................................... 23

*Jones v. Ortho Pharm. Corp*.
(1985) 163 Cal.App.3d 396, 402–403 ......................................................... 23

*Kisela v. Hughes*,
138 S. Ct. 1148, 1153 (2018) ................................................................... 14

*Koistra v. Cty. of San Diego*,
310 F. Supp. 3d 1066, 1076–77 (S.D. Cal. 2018) ........................................ 19, 21

*Lopez v. City of Los Angeles*,
196 Cal. App. 4th 675, 685-686, 689 (2001) ................................................. 19

*Lowry v. City of San Diego*,
858 F.3d 1248, 1256 (9th Cir. 2017) ....................................................... 18, 21

*Lumbreras v. Roberts*,
319 F. Supp. 2d 1191, 1211 (D. Or. 2004) ................................................... 18

*Maddox v. Los Angeles*,
792 F.2d 1408, 1413 (9th Cir. 1986) .......................................................... 18

*Meade v. Cedarapids, Inc.*,
164 F.3d 1218, 1225 (9th Cir. 1999) ............................................................ 2

*Meredith v. Erath*,
342 F.3d 1057, 1062 (9th Circ. 2003) ...................................................... 16, 21

*Monzon v. City of Murrieta*,
No. 19-55164, 2020 WL 6293163, at *5 (9th Cir. Oct. 27, 2020) ........................ 17

*Munoz v. City of Union City*,
120 Cal. App. 4th 1077, 1102 (2004) ................................................................ 19, 24

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
210 F.3d 1099, 1102 (9th Cir. 2000) ...................................................................... 2

*Porter v. Osborn*,
546 F.3d 1131, 1136, 39 (9th Cir. 2008) .............................................................. 19

*Reese v. Cty. of Sacramento*,
888 F.3d 1030, 1043 (9th Cir. 2018) .............................................................. 20, 24

*Reichle v. Howards*,
566 U.S. 658, 664 (2012) ...................................................................................... 14

*Robinson v. Solano Cnty.*,
278 F.3d 1007, 1013 (9th Cir. 2002) .............................................................. 16, 21

*Saucier v. Katz*,
533 U.S. 194, 205 (2001) ................................................................................. 13, 17

*Scott v. Henrich*,
39 F.3d 912, 915 (9th Cir. 1994) .......................................................................... 22

*Sitrick v. Dreamworks, LLC*
(Fed. Cir. 2008) 516 F.3d 993, 1001 ...................................................................... 3

*Taylor v. List*,
880 F.2d 1040, 1045 (9th Cir. 1989) .................................................................... 15

*Terry v. Ohio*,
392 U.S. 1, 22-27 (1968) ............................................................. 15, 16, 17, 21

*United States v. Jacobs*,
17 F.2d 1343, 1345 - 46 (9th Cir. 1983) ........................................... 16, 21, 22, 24

*United States v. Place*,
462 U.S. 696, 703, 103 (1983) ............................................................................. 17

*United States v. Valdes-Vega,*
738 F.3d 1074, 1078 (9th Cir.2013) ............................................................ 15, 21

*Van Asdale v. International Game Tech.*
(9th Cir. 2009) 577 F.3d 989, 998 .................................................................. 2

*White v. Pauly,* —— U.S. ——,
137 S.Ct. 548, 552 (2017) ............................................................................ 14

*Wilkinson v. Torres*
(9th Cir.2010) 610 F.3d 546, 554 .................................................................. 18

*Wilson v. Layne,*
526 U.S. 603, 61 (1999) ................................................................................ 14

**Statutes**

42 U.S.C. § 1983 ......................................................................................... 1, 16

CACI 3066 ................................................................................................... 20, 24

CACI No. 440 .............................................................................................. 19

Cal. Civ. § 52.1 ........................................................................................... 1

Cal. Pen. Code § 835(a) .............................................................................. 19

California Civil Code § 52.1 ........................................................................ 20

P.C. 148 ....................................................................................................... 15, 22

**Other Authorities**

Ninth Circuit Model Jury Instruction 9.2 .................................................... 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case arises out of an incident that occurred on December 7, 2018 at the United State Post Office located at 7101 South Central Ave. in Los Angeles, CA. The incident involved Mr. Joseph Alan Wear ("Mr. Wear," or "Decedent"), United States Post-Office police officers ("U.S. Post Office Officers") and Defendant Los Angeles County Sheriff's Deputy Adrian De Casas ("Deputy De Casas") and Deputy Jonathan Pawluk ("Deputy Pawluk"), all of whom were summoned due to Mr. Wear's undisputed erratic and aggressive behavior near an elementary school.

On *December 19, 2019*, Plaintiff Donnelle Wear ("Plaintiff Wear") filed the instant lawsuit alleging one (1) cause of action for Substantive Due Process-Interference with Parent-Child Relationship 42 U.S.C. §1983. On *February 2, 2021*, Plaintiff HEATHER BLANCHARD, as guardian ad litem for minor child I.C.W., successor in interest to Joseph Alan Wear, ("Plaintiff ICW") filed the instant Fourth Amended Complaint under Case No.: 8:19-CV-02438-JVS (DFM) alleging six (6) causes of action for: 1) Unreasonable Force (42 U.S.C. §1983); 2) Substantive Due Process-Interference with Parent-Child Relationship (42 U.S.C. § 1983)("Substantive Due Process claim"); 3) Wrongful Death; 4) Bane Act (Cal. Civ. § 52.1); 5) Battery; and 6) Negligence. On February 16, 2021, the Court consolidated the Wear case and I.C.W. cases. **Wear case Dkt. 41.**

Here, Defendants respectfully move this Court for summary judgment or, in the alternative, adjudication or qualified immunity because Defendant Pawluk's use of *de minimus* force was objectively reasonable under the totality of the circumstances. It is undisputed that Deputy De Casas had no involvement in the physical restraint of Mr. Wear, and Plaintiffs have no "Failure to Intervene" claim.

Further, Defendants are entitled to qualified immunity because the law was not clearly established to where *every* reasonable officer *under the circumstances facing Defendants* would know Defendants' aforementioned conduct would be

unlawful. There is no or insufficient evidence, nor does Plaintiff's expert pathologist Dr. Marvin Pietruszka ("Dr. Pietruszka") opine, that Defendants' actions were a substantial factor in causing Mr. Wear's death from asphyxia vs. a methamphetamine overdose to any reasonable medical probability. Defendants have concurrently filed a *Daubert* motion as to Dr. Pietruszka's opinions.

Despite the tragic nature of this incident, the admissible evidence entitles Defendants to summary judgment and/or qualified immunity as a matter of law.

## II.   <u>STANDARD OF REVIEW FOR A F.R.C.P. RULE 56 MOTION</u>

Under FRCP Rule 56(a), summary judgment is proper where discovery shows that there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." A party cannot defeat a summary judgment by producing a "mere scintilla of evidence to support its case." *City of Vernon v. So. Cal.Edison Co.*, 955 F.2d 1361, 1369 (9th Cir. 1992)

Defendants are not required to produce evidence showing the absence of a material fact on such issues. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A non-moving party's failure to produce specific, admissible evidence concerning an essential element of the non-moving party's case renders all other facts immaterial. *Celotex Corp. v. Catrett* 477 U S. 317, 323 (1986); *Bhan v. NMEHosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)

Further, "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *AIG, Inc. v. American International Bank*, 926 F.2d 829, 833, 836-37(9th Cir. 1991) ("inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party.") "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999).

A party cannot create an issue of fact by a mere declaration contradicting his or her own deposition or other sworn testimony. *Van Asdale v. International Game*

*Tech.* 577 F.3d 989, 998 (9th Cir. 2009) A non-movant cannot create a "genuine" issue of "material" fact simply by making bare assertions, denials, *counsel arguments*, *speculation*, or *conclusory statements* in memoranda, or simply questioning a witness/party's credibility. *Enzo Biochem, Inc. v. Applera Corp.* (Fed. Cir. 2010) 599 F.3d 1325, 1337; *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985). An expert's conclusory opinions on the ultimate fact/legal issue does not create a genuine issue of material fact. *Sitrick v. Dreamworks*, LLC (Fed. Cir. 2008) 516 F.3d 993, 1001.

## III. <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

On the afternoon of December 7, 2018, Mr. Joseph Alan Wear ("Mr. Wear") entered the United States Post Office located at 7101 South Central Ave. in Los Angeles, CA. **Separate Statement of Uncontroverted Material Facts ("SSUMF") #1** Mr. Wear was carrying his skateboard, and gave a United States Postal Clerk a taser and a can of pepper spray, and said something to the effect of: "Help, they're after me. I need help. Can I use the phone?" **SSUMF #2**

Mr. Wear said something to the effect of "Help, they're after me. I need help. Can I use the phone?" to the Postal Clerk. **SSUMF #3** Mr. Wear was delusional and in an agitated state of mind. **SSUMF #4** Mr. Wear, who was in an obviously delusional and agitated state of mind, ran out of the U.S. Post Office in Los Angeles, California, followed by U. S. Postal Service Police Officers GUERRERO, ECHEVARRIA, PAVON, TALABI. **SSUMF #5** When Mr. Wear ran outside of the U.S. Post Office, climbed-up a tree and jumped out of the same. **SSUMF #6**

After jumping out of the tree, Mr. Wear ran across the streets while engaging pedestrian traffic. **SSUMF #7** Mr. Wear continually threw himself into quickly moving vehicles causing "blood gushing everywhere" from his head and abrasions to his body. **SSUMF #8** Mr. Wear also threw LADOT signs at cars. **SSUMF #9**

A LADOT sign thrown by Mr. Wear struck a truck. **SSUMF #10** The driver of a truck struck by the LADOT sign thrown by Mr. Wear exited the truck, and

began punching and kicking Mr. Wear. **SSUMF #11**. Mr. Wear fell to the ground as a result of the driver's punches, but then got back up. **SSUMF #12**

Mr. Wear then approached a woman with two (2) small children, and aggressively grabbed a small child from the woman. **SSUMF #13** Mr. Wear attempted to throw the child and/or the child's carriage into the street. **SSUMF #14** Mr. Mario Palacios rescued the small child from Mr. Wear and told him to "Get out of here." **SSUMF #15** Mr. Wear continued to throw himself into vehicles, but then several male-Hispanic individuals got out of one of the vehicles hit by Mr. Wear, punched Mr. Wear in the face, and threw him on to the sidewalk. **SSUMF #16**

Mr. Wear got up and continued acting erratically. **SSUMF #17** As Mr. Wear approached Wilson Elementary School, several parents began struggling on the ground to restrain Mr. Wear to keep him away from the children exiting the school. **SSUMF #18** Mr. Wear was a threat to the children. **SSUMF #19**

The U.S. Postal Service Officers pursuing Mr. Wear arrived and attempted to handcuff and detain Mr. Wear. **SSUMF #20** The U.S Postal Service Officers were wearing "gray" or "bluish gray" shirts with navy or black pants. **SSUMF #21**

On December 7, 2018 at approximately 2:30 p.m., Los Angeles County Sheriff's Deputy Jonathan Pawluk ("Deputy Pawluk") was wearing a standard Sheriff's uniform with *green pants and a tan shirt*. **SSUMF #22** At the time of this incident, Deputy Pawluk and his partner, Deputy Adrian De Casas ("Deputy De Casas") were clearing a prior call service near the area of 74th St. and Hooper Avenue, when they were flagged down by a motorist on Hooper Ave. informing them that there was an individual "acting crazy near the school," and that they should check it out because people were already calling 911.[1] **SSUMF #23**

Based on the motorist's information, Deputy Pawluk and Deputy De Casas proceeded to drive westbound on 74th St., which took them past Wilson Elementary

---

[1] Simply foundational and for Defendants' state of mind. Not offered for the truth of the matter.

school on the corner of 74th and Central. School. **SSUMF #24** Based on Deputy Pawluk's significant patrol experience in the area, he knew Wilson Elementary was in the process of letting out the children to their parents because it was approximately 2:30 p.m. **SSUMF #25**

As Deputy Pawluk and Deputy De Casas were driving westbound on 74th near the school, Deputy Pawluk heard what he determined to be an air horn from a car that was further west of Deputy Pawluk's location. **SSUMF #26** When Deputy Pawluk and Deputy De Casas arrived at the intersection of 74th and Central, Deputy Pawluk observed a U.S. Postal Service vehicle that was parked at the southwest corner of the intersection with the air horn going off. **SSUMF #27**

One or more civilians and one or more Postal Service Inspectors/Post Office Security Officers (DOES 7 and 8) were in the process of restraining plaintiff's decedent, Joseph Alan Wear, when a presently unidentified LASD deputy sheriff(s), DOES 1 through 6, inclusive, was/were also driving by the scene of the subject incident. **SSUMF #28** One or more civilians and one or more U.S. Postal Service Police Officers were in the process of restraining Mr. Wear, when Deputy Pawluk and Deputy De Casas were driving by the subject incident. **SSUMF #29**

As Deputy Pawluk was driving up, he saw Mr. Wear physically resisting and struggling on the ground with two U.S. Postal Service officers in uniform that appeared to be attempting to handcuff him. **SSUMF #30** Mr. Wear was yelling and making loud noises, but not anything Deputy Pawluk could discern. **SSUMF #31**

It appeared to Deputy Pawluk that the U.S. Postal Service officers were having significant difficulty handcuffing Mr. Wear due to his physical resistance moving his body and legs attempting to get up. **SSUMF #32** Deputy Pawluk decided to assist the U.S. Postal Service officers to handcuff Mr. Wear for Mr. Wear's safety, the U.S. Postal Service officers' safety, and the safety of children and parents near the elementary school. **SSUMF #33** Plaintiff admits reasonable suspicion existed to detain Mr. Wear. **SSUMF #34** Plaintiff admits probable cause

existed to arrest Mr. Wear. **SSUMF #35**

Deputy De Casas was responsible for securing the area and crowd control. **SSUMF #36** Deputy Pawluk exited the patrol vehicle, approached Mr. Wear, and saw the U.S. Postal Service officers had one handcuff placed around Mr. Wear's right wrist that was near Mr. Wear's head. **SSUMF #37** Deputy Pawluk heard the U.S. Postal Service officers giving multiple commands for Mr. Wear to put his hands behind his back to no avail. **SSUMF #38** Deputy Pawluk could see that Mr. Wear's body was very tense, veins were sticking out of his neck, and his legs and torso were repeatedly shifting from side to side attempting to get up and actively resisting the U.S. Postal Service officers' efforts to handcuff him. **SSUMF #39**

Deputy Pawluk noticed that one of the U.S. Postal Service Officers had what looked like his knee or shin on Mr. Wear's body appearing to attempt to control and stop Mr. Wear from kicking up his legs. **SSUMF #40** Deputy Pawluk noticed that the other U.S. Postal Service Officer appeared to be positioned towards Mr. Wear's right-side torso attempting to control Mr. Wears' right arm. **SSUMF #41**

To assist the U.S. Postal Service Officers, Deputy Pawluk took a position to the left of Mr. Wear's torso, took out his pair of handcuffs, applied a handcuff to Mr. Wear's left wrist, and utilized the handcuffs with some moderate to minimal physical force to help pull Mr. Wear's left arm behind his back. **SSUMF #42** Mr. Wear was actively physically resisting Deputy Pawluk's efforts. **SSUMF #43**

Mr. Wear appeared to Deputy Pawluk to be under the influence of some kind of narcotic as Mr. Wear was very strong and tense, yelling incoherently, extremely aggressive, and not complying with numerous simple commands to place his arms behind his back. **SSUMF #44** Once the handcuff to Mr. Wear's left wrist was secured and placed behind his back, Deputy Pawluk used his left leg to cinch Mr. Wear's left arm behind his body to hold it in position on his lower back while the U.S. Postal Service Officer and Deputy Pawluk were able to overcome Mr. Wear's resistance on his right arm and pull it behind his back where Deputy Pawluk applied

the handcuff to Mr. Wear's right wrist. **SSUMF #45**

At this time, Deputy Pawluk did not apply his full or even half of his bodyweight to Deputy Pawluk's left leg that was on Mr. Wear's left arm to hold it in place while we handcuffed Mr. Wear's right arm. **SSUMF #46** At this time, Deputy Pawluk only used the amount of force, which was fairly minimal, he felt was necessary to overcome Mr. Wear's continuing active resistance of tensing and pulling his arms away from the officers to prevent handcuffing. **SSUMF #47**

Deputy Pawluk did not punch, kick, hit, or otherwise strike Mr. Wear with any weapon. **SSUMF #48** Deputy De Casas did not punch, kick, hit, or otherwise strike Mr. Wear with any weapon. **SSUMF #49** In fact, Deputy De Casas did not physically participate in attempting to handcuff Mr. Wear at all. **SSUMF #50**

Once Mr. Wear's right and left arm were secured with Deputy Pawluk's handcuffs, Deputy Pawluk removed the U.S. Postal Service Officer's handcuffs to Mr. Wear's left arm. **SSUMF #51** However, Mr. Wear was still kicking his legs and trying to move his torso up from the asphalt in what appeared to be a continued attempt to kick the officers, struggle, and escape. **SSUMF #52**

Here and solely in response to Mr. Wears continued aforementioned active resistance despite his being handcuffed, Deputy Pawluk placed his right knee along the back of Mr. Wear's *hamstrings/rear thigh* to keep his legs from kicking Deputy Pawluk and the officers. **SSUMF #53** Deputy Pawluk placed his left leg across Mr. Wear's *lower back* to prevent him from trying to get up and escape while one of the U.S. Postal officers held Mr. Wear's legs down. **SSUMF #54**

However, Deputy Pawluk again, did not apply his full or even half of his bodyweight to his left leg that was on Mr. Wear's back solely to stabilize his torso so as to not injure him or his spine. **SSUMF #55** At this time, most of Deputy Pawluk's weight, and still not Deputy Pawluk's full body weight, was on Deputy Pawluk's right leg *on the back of Mr. Wear's hamstrings* solely to prevent Mr. Wear's legs from kicking the officers. **SSUMF #56**

Deputy Pawluk did not punch, kick, hit, OC spray, taser, or otherwise strike Mr. Wear with any weapon at this or any time. **SSUMF #57** Deputy De Casas did not punch, kick, hit, OC spray, taser, or otherwise strike Mr. Wear with any weapon at this or any time. **SSUMF #58** Mr. Wear was never hobbled or tarped. **SSUMF #59** During this period of time, Deputy Casas was responsible for securing the area and ordering the crowd to keep their distance for everyone's safety and did not touch or otherwise use any force against Mr. Wear at any time. **SSUMF #60**

Once Mr. Wear was secured, Deputy Pawluk's next thought was to place Mr. Wear in the backseat of Defendants' patrol vehicle to request medical resources. **SSUMF #61** Deputy Pawluk put Mr. Wear into a recovery position on his left side and gave Mr. Wear a couple of taps on the shoulder to inform him that Deputy Pawluk intended to get Mr. Wear up to which he did not respond. **SSUMF #62** At that point, Deputy Pawluk felt Mr. Wear appear to be limp. **SSUMF #63** The entire time from the time when Mr. Wear was first handcuffed by Deputy Pawluk until the time he was put in the aforementioned recovery position wherein he appeared limp was approximately a minute or less. **SSUMF #64**

Upon feeling Mr. Wear go limp, Deputy Pawluk then checked Mr. Wear's carotid and radial arteries for a pulse but felt none. **SSUMF #65** Deputy Pawluk looked at Mr. Wear's face for any signs of breathing but saw none. **SSUMF #66** Deputy Pawluk then immediately informed his training officer and partner of Mr. Wear's non-responsiveness, flipped him on his side, immediately took off the handcuffs, placed Mr. Wear on his back, and began chest compressions while the deputies put out traffic for a 902R rescue ambulance. **SSUMF #67**

Another Sheriff's unit arrived shortly thereafter and was able to give mouth to mouth resuscitation to Mr. Wear via a mask. **SSUMF #68** The deputies continued CPR until they were relieved by the Los Angeles Fire Department. **SSUMF #69** Mr. Wear was treated at UCLA Harbor City Hospital, where he died. **SSUMF #70**

Los Angeles County Coroner Deputy Medical Examiner Matthew D. Miller,

MD ("Dr. Miller") conducted Mr. Wear's autopsy. **SSUMF #71** Dr. Miller determined that Mr. Wear died by "methamphetamine toxicity" resulting in cardiac arrest. **SSUMF #72** Dr. Miller's autopsy of Mr. Wear revealed no evidence of asphyxia. **SSUMF #73** Dr. Miller's autopsy of Mr. Wear revealed no evidence of external trauma that caused or contributed to Mr. Wear's death. **SSUMF #74**

Plaintiff admits that handcuffs *are not lethal force*. **SSUMF #75** Plaintiff admits that handcuffs are not "lethal restraints." **SSUMF #76** Plaintiff admits that no HEALTH CARE PROVIDER has told her that handcuffing caused Joseph Alan Wear's death. **SSUMF #77** Plaintiff admits that no HEALTH CARE PROVIDER has told her that handcuffing contributed Joseph Alan Wear's death. **SSUMF #78**

Plaintiff's designated expert pathologist, Dr. Marvin Pietruszka ("Dr. Pietruszka"), opines that Mr. Wear's death was a combination of positional asphyxia and head/brain trauma. **SSUMF # 79** Dr. Pietruszka never was provided nor reviewed any medical reports from Harbor UCLA where Mr. Wear was treated on the date of the incident. **SSUMF # 80** Dr. Pietruszka was never provided any documents showing Mr. Wear's blood oxygenation level as he was being treated in the hospital. **SSUMF # 81** Dr. Pietruszka never conducted an independent autopsy of Mr. Wear. **SSUMF # 82** Dr. Pietruszka was never provided any documents showing Mr. Wear's blood oxygenation level during transport. **SSUMF #83**

Dr. Pietruszka does not opine to any reasonable medical probability that Deputy Pawluk caused any head injury to Mr. Wear. **SSUMF # 84** Dr. Pietruszka does not opine to any reasonable medical probability that Deputy De Casas caused any head injury to Mr. Wear. **SSUMF # 85**

Dr. Pietruszka does not opine to any reasonable medical probability that Deputy Pawluk caused any abrasions or contusions to Mr. Wear's body. **SSUMF #86** Dr. Pietruszka does not opine to any reasonable medical probability that Deputy De Casas caused any abrasions or contusions to Mr. Wear's body. **SSUMF #87**

Dr. Pietruszka agrees that there was no overtly fatal trauma to Mr. Wear.

**SSUMF #88** Dr. Pietruszka agrees that there was no injury to Mr. Wear's larynx or pharynx. **SSUMF #89**  Dr. Pietruszka agrees that fractures to Mr. Wear's right and left ribs are most likely consistent with resuscitation efforts and treatment. **SSUMF #90** Dr. Pietruszka does not opine to any reasonable medical probability that Deputy Pawluk caused any injuries to Mr. Wear's neck. **SSUMF #91**

Dr. Pietruszka is not offering any opinion that Deputy Pawluk caused any "blunt force traumatic injuries involving the head, neck, and back extremities" of Mr. Wear. **SSUMF #92**  Dr. Pietruszka is not offering any opinion that Deputy Pawluk caused any scalp or tongue injury of Mr. Wear. **SSUMF #93** Dr. Pietruszka is not offering any opinion that Deputy Pawluk caused any forehead, left cheek, face, nose, or upper lip injury of Mr. Wear. **SSUMF #94**

Dr. Pietruszka agrees that petechial hemorrhaging, i.e. rupture of small blood vessels in the eyes, tongue, lips, and other parts of the body, is consistent with increased pressure causing asphyxia. **SSUMF #95**  Dr. Pietruszka agrees that there was no evidence of petechial hemorrhages anywhere in any part of Mr. Wear's body. **SSUMF #96**

Dr. Pietruszka agrees that hypoxia is low oxygen in the blood in the body. **SSUMF #97** Dr. Pietruszka saw no evidence of hypoxic changes to Mr. Wear's brain. **SSUMF #98**   Dr. Pietruszka agrees that ischemic hypoxic neurons are neurons in the brain that suggest there may be lack of oxygen, i.e. hypoxia caused by apshyxia. **SSUMF #99** Dr. Pietruszka found no evidence of ischemic hypoxia neurons to Mr. Wear's brain. **SSUMF #100**

Dr. Pietruskza agrees that one of the usual, objective signs of asphyxia is petechial hemorrhages of the conjunctiva of the eyes. **SSUMF #101** In Dr. Pietruszka's review of the evidence of the incident, he saw no evidence of petechial hemorrhages of the conjunctiva of the eyes. **SSUMF #102** Dr. Pietruskza agrees that one of the  objective signs of asphyxia is petechial hemorrhages of the viscera, i.e. organs. **SSUMF #103** In Dr. Pietruszka's review of the evidence, he saw no

evidence of petechial hemorrages of the viscera, i.e. organs. **SSUMF #104**

Dr. Pietruskza agrees that one of the  objective signs of asphyxia is petechial hemorrhages of the skin. **SSUMF #105**  In Dr. Pietruszka's review of the evidence of the incident, he saw no evidence of petechial hemorrages of the skin. **SSUMF #106** Dr. Pietruskza agrees that one of the usual, objective signs of asphyxia is pulmonary edema, i.e. swelling. **SSUMF #107** In Dr. Pietruszka's review of the evidence of the incident, he saw no evidence of pulmonary edema.  **SSUMF #108**

Dr. Pietruskza agrees that cerebral edema is a usual, objective signs of asphyxia. **SSUMF #109** However, Dr. Pietruszka opines that the cerebral edema he saw was consistent with trauma to Mr. Wear's head and brain area. **SSUMF #110**

Dr. Pietruskza agrees that visceral congestion, i.e. organ congestion, is another potential objective sign of asphyxia. **SSUMF #111** In Dr. Pietruszka's review of the evidence, he saw no evidence of visceral congestion. **SSUMF #112**

Dr. Pietruszka agrees that one of the generally accepted criteria for making a finding of positional asphyxia as a cause of death is ruling out other potential reasonable causes of death. **SSUMF #113** Dr. Pietruszka agrees that methamphetamine ultimately contributed to Mr. Wear's death. **SSUMF #114**

Dr. Pietruszka admits that Mr. Wears' toxicology results reveal a heart blood methamphetamine level of .87 micrograms per milliliter. **SSUMF #115** Dr. Pietruszka admits Mr. Wears' toxicology results reveal a femoral blood methamphetamine level of .5 micrograms per milliliter. **SSUMF #116** Dr. Pietruszka opines that drug toxicology in the "lethal range" "is usually fatal." **SSUMF #117** Dr. Pietruszka agrees that Mr. Wear's methamphetamine level in the heart blood of 0.87 micrograms per milliliter is in the toxic range. **SSUMF #118** Dr. Pietruszka agrees that Mr. Wear's heart blood of 0.87 micrograms per milliliter is in the lethal range. **SSUMF #119**

Dr. Pietruszka agrees based on his review of the evidence that Mr. Wear's heart and femoral toxicology for methamphetamine were both in the toxic range.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SSUMF #120** Dr. Pietruszka agrees based on his review of the evidence that Mr. Wear's heart and femoral toxicology for methamphetamine are both in the lethal range. **SSUMF #121** Dr. Pietruszka agrees that Mr. Wear's blood methamphetamine toxicology levels being in the toxic and lethal range could be determined as a potential reasonable cause of death for Mr. Wear. **SSUMF #122**

Dr. Pietruszka agrees that methamphetamine can cause cardiac arrythmia. **SSUMF #123** Dr. Pietruszka agrees that methamphetamine can cause cardiac arrest, leading to cardiac arrest. **SSUMF #124** Dr. Pietruszka agrees that the level of methamphetamine in Mr. Wear's blood is within the range of studies showing the blood toxicity of individuals who have died by cardiac arrythmia caused by methamphetamine. **SSUMF #125**

Dr. Pietruszka cannot state to any reasonable medical probability that Deputy Pawluk's actions caused Mr. Wear's positional asphyxia. **SSUMF #126** Dr. Pietruszka cannot state to any reasonable medical probability that Deputy De Casas actions caused Mr. Wear's positional asphyxia. **SSUMF #127**

Dr. Pietruszka admits that there is no medical literature that placing weight on the back of an individuals legs, as Deputy Pawluk did, could cause positional asphyxia. **SSUMF # 128** Dr. Pietruszka placed all of his opinions in his declaration. **SSUMF #129** Nowhere in Dr. Pietruskz'a declaration, does Dr. Pietruszka state to a reasonable medical probability that Deputy Pawluk caused any potential asphyxia or mechanical asphyxia to Mr. Wear. **SSUMF #130**

Dr. Pietruszka cannot state to any reasonable medical probability that Deputy Pawluk caused any positional asphyxia to Mr. Wear. **SSUMF #131** Dr. Pietruszka does not know how long Deputy Pawluk physically assisted in restraining Mr. Wear. **SSUMF # 132** Dr. Pietruszka has no information as to how long, if at all, Deputy Pawluk put any weight on any part of Mr. Wear. **SSUMF #133**

Dr. Pietruszka never saw evidence or information stating what weight, if any, Deputy Pawluk placed on Mr. Wear and on what part of Mr. Wear's body. **SSUMF**

**#134** Dr. Pietruszka never saw any evidence that Deputy Pawluk put any of his weight to the extent to cause positional asphyxia. **SSUMF #135**

Dr. Pietruszka testified that the only objective medical evidence of asphyxia that exists as it relates to Mr. Wear is the video of U.S. Postal Service officers on his back holding Mr. Wear down. **SSUMF #136** Dr. Pietruszka believes the parties seen in the Snapchat video restraining Mr. Wear, the U.S. Postal Service Officers, are "the more responsible party" for Mr. Wear's asphyxia. **SSUMF #137** Dr. Pietruszka cannot opine to any reasonable medical probability as to whether Deputy Pawluk placed more weight on Mr. Wear as opposed to the U.S. Postal Service Officers or anyone else. **SSUMF #138** Dr. Pietruszka opines that the "main main cause" of Mr. Wear's asphyxia is the U.S. Postal officers' actions. **SSUMF #139**

Dr. Pietruszka agrees that Mr. Wear's conduct, i.e. the incident with the bus, fighting and being restrained by civilians, being restrained by the Postal Service officers, being restrained by Deputy Pawluk, and Mr. Wear's resistance to those efforts would cause stress on his body and heart. **SSUMF # 140** Dr. Pietruszka opines that blood coming from the mouth is "not necessarily asphyxia of this type that we're discussing" alleged to have occurred to Mr. Wear. **SSUMF #141**

## IV.   ARGUMENT

### A. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE LAW WAS NOT "CLEARLY ESTABLISHED"

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) In *Saucier v. Katz* 533 U.S. 194 (2001), the Supreme Court established a two-step sequence for determining whether qualified immunity attaches: 1) If facts alleged could show that "the officer's conduct

violated a constitutional right;" and 2) Whether the right at issue was "clearly established" at the time of the alleged misconduct. *Id.* at 201.

 "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to *every reasonable officer* that his conduct was unlawful *in the situation he confronted.*" *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018); *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (*Emphasis added*); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This is an "objective but fact-specific inquiry." *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007).

"I[f] officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008) "Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)

The Supreme Court reiterated that "'clearly established law' should not be defined "at a high level of generality," but must be "'particularized' to the facts of the case." *White v. Pauly*, —— U.S. ——, 137 S.Ct. 548, 552 (2017); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (holding that the relevant inquiry "must be undertaken *in light of the specific context of the case*, not as a broad general proposition")

In other words, *Plaintiff* bears the burden to point to prior case law that articulates a constitutional rule specific enough to clearly establish and alert *these* deputies *in this case* that *their particular conduct under these circumstances* was unlawful. *White*, —— U.S. ——, 137 S.Ct. 548, 552 (2017) (*per curiam*). To achieve that kind of notice, the prior precedent must be "controlling" – from the Ninth Circuit or Supreme Court – or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. *Wilson v. Layne*, 526 U.S. 603, 61 (1999).

1. **DISCUSSION**

Here, Defendants are entitled to qualified immunity because Decedent's rights were not so clearly established here to where every reasonable officer would

know they were violating his rights under the circumstances facing them. As a preliminary matter, Deputy De Casas simply performed crowd control, did not physically participate in handcuffing nor used any force against Mr. Wear, which outright warrants summary judgment and qualified immunity. **SSUMF #36, 49-50** Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979)

Reasonable suspicion" to detain is an objectively reasonable belief based on specific and articulable facts, such as those mentioned above. *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968) "Reasonable suspicion" is further defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir.2013). In *Graham*, the U.S. Supreme Court stated it "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989)

Here, no reasonable officer would have simply disregarded the information known to defendants, seen U.S. Postal Service Officers struggling with a suspect near children, and simply kept driving or otherwise done nothing under the circumstances. **SSUMF #24-64** The minimum any reasonable officer would have done, is what Deputy Pawluk did here.

Here, it is undisputed that Defendants had a "particularized and objective basis for suspecting the particular person stopped of criminal activity" by virtue of seeing Mr. Wear struggling with uniformed U.S Postal Service officers, at a minimum P.C. 148, *and* the citizen report. **SSUMF #34-35** The Supreme Court has held "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense..., he may, without violating the

Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Here, it is clearly established that police officers *are* entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations, and that handcuffing is a "minimal" use of force that would obviously be justified under the circumstances facing Defendants. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) *citing United States v. Jacobs*, 17 F.2d 1343, 1345 - 46 (9th Cir. 1983); *Robinson v. Solano Cnty*., 278 F.3d 1007, 1013 (9th Cir. 2002); *Davis v. Adamson*, 290 F. App'x 35, 37 (9th Cir. 2008) (handcuffing of suspects not excessive force; handcuffing allowed until suspects determined not to pose a threat); *Meredith v. Erath*, 342 F.3d 1057, 1062 (9th Circ. 2003)("use of handcuffs was justified during a *Terry* stop to ensure officer safety from suspected violent criminals and to prevent their escape.")

The fact that Mr. Wear undisputedly consumed such a large amount of methamphetamine, which caused him to act erratically and pose a danger to the public while being at risk of suffering a heart attack if force is used to restrain him, does not render an officers' otherwise lawful detention and use of force unreasonable simply because Mr. Wear died during his detention. Neither Mr. Wear nor anyone else is entitled to be intoxicated and engage in whatever conduct they wish without consequence simply because they may suffer a cardiac arrest if minimal lawful force is used to overcome their intoxicated resistance.

Accordingly, it was not clearly established that Deputy Pawluk's assisting U.S. Postal Service Officers to handcuff and detain Mr. Wear in the manner he did would be unlawful, which warrants qualified immunity.

## B. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

### 1. LEGAL STANDARD 42 U.S.C. § 1983- NON-DEADLY FORCE

All excessive force claims under 42 U.S.C. § 1983 are analyzed under the Fourth Amendment's objective "reasonableness" standard. *Graham v. Connor*, 490

U.S. 386, 395 (1989). The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather with the 20/20 vision of hindsight… Reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving" *Graham*, 490 U.S. at 396; (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968); *Monzon v. City of Murrieta*, No. 19-55164, 2020 WL 6293163, at \*5 (9th Cir. Oct. 27, 2020) ("[w]e are also required to view the facts as an officer would have encountered them on the night in question, not as an *ex post facto* critic dissecting every potential variance under a magnifying glass… Judges and lawyers viewing an event like this in hindsight from the comfort of their armchairs are often tempted to dissect, evaluate, and second-guess the officers' actions piecemeal. That would be a serious mistake. Cherry-picking specific facts in hindsight is not at all reflective of how this event transpired in real life.")

Thus, the question is not how much force was *actually needed*, but how much force a reasonable officer on the scene *would perceive* needing. *Saucier v. Katz*, 533 U.S. 194, 205 (2001). "Thus, under *Graham*, we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 813 (9th Cir. 2014)

In *non-deadly force cases* such as this one, the reasonableness of a seizure is determined by balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703, 103 (1983). Specific to non-deadly force cases, in determining whether the manner of a seizure is objectively reasonable, courts consider: "(1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the

balance between 'the gravity of the intrusion on the individual' and 'the government's need for that intrusion.' " *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (*en banc*); *Koistra v. Cty. of San Diego*, 310 F. Supp. 3d 1066, 1076–77 (S.D. Cal. 2018). Mere negligence *cannot* be the source of liability for a section 1983 claim. *Maddox v. Los Angeles*, 792 F.2d 1408, 1413 (9th Cir. 1986); *Billington v. Smith*, 292 F.3d 1177, 1188-89 (9th Cir. 2002)(Force need not be "the least intrusive means," but only "within that range of conduct" deemed reasonable.)

## 2. <u>LEGAL STANDARD FOR SUBSTANTIVE DUE PROCESS § 1983</u>

For a substantive due process claim, plaintiff must prove: (1) they were deprived of a fundamental liberty interest; *and* (2) defendants' actions were so "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," and "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *FDIC v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991. Accordingly, "[e]stablishing a substantive due process violation is difficult." *Lumbreras v. Roberts*, 319 F. Supp. 2d 1191, 1211 (D. Or. 2004).

Moreover, "[*i*]*t is well settled that negligence is not sufficient to shock the conscience*," and that "*a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.*" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006)(*Emphasis added*) In determining whether the deputies' conduct "shocks the conscience," the *court* must first decide which "standard of culpability" applies. *Wilkinson v. Torres* (9th Cir.2010) 610 F.3d 546, 554.

The appropriate standard of culpability depends upon the type of situation that defendant is in at the time of the challenged action. If the deputy found himself in a situation where "actual deliberation is practical," then his "deliberate indifference" to the harm he caused may be sufficient to shock the conscience. *Gantt v. City of Los Angeles* (9th Cir.2013) 717 F.3d 702, 707–08. On the other

hand, if a deputy made a "snap judgment" because he found himself in an "escalating" and/or "fast paced" situation "presenting competing public safety obligations," then his conduct will not shock the conscience unless he acted "with a purpose to harm" decedent that was "unrelated to legitimate law enforcement objectives." *Id.*; *Porter v. Osborn*, 546 F.3d 1131, 1136, 39 (9th Cir. 2008)

Here and because the aforementioned facts of the rapidly evolving situation and erratic behavior of Mr. Wear required a split-second decision by Defendants to assist the U.S. Postal Service Officers, the "purpose to harm" standard applies. However, Defendants are entitled to summary judgment upon either standard.

### 3. <u>LEGAL STANDARD FOR BATTERY</u>

To prevail on a battery claim against a police officer in California, the plaintiff must show that the officer used unreasonable force. *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004). The analysis is identical to the *Graham* reasonableness analysis above. *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273, (1998); *See also* CACI 1305 "Battery by Peace Officer"; Cal. Pen. Code § 835(a)

### 4. <u>LEGAL STANDARD FOR NEGLIGENCE</u>

To prove a negligence claim against a police officer, the objectively reasonable *Graham* standard is also used with the added factor of "Defendants' tactical conduct and decisions before using deadly force..." *See* CACI No. 440; *Lopez v. City of Los Angeles*, 196 Cal. App. 4th 675, 685-686, 689 (2001) If an officer's conduct "falls *within the range of conduct* that is reasonable under the circumstances, *there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm* and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 537–538; *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 632 (2013)

"What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 813 (9th Cir. 2014) In *Brown*, *supra*, at pgs. 537-538 the Court described the unique analysis employed when determining whether an officer negligently employed force:

"The law has never been applied to suggest that there is only one reasonable action that an officer may take under a given set of circumstances. There will virtually always be a range of conduct that is reasonable… It would be unreasonable to require police officers in the field to engage in the sort of complex calculus that would be necessary to determine the "best" or most effective and least dangerous method of handling an immediate and dangerous situation, particularly when officers are forced to make split-second decisions under tense and often perilous conditions."

Accordingly, Plaintiff must prove unreasonable force "as an element of the tort." *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998) If Plaintiff cannot prove battery, Plaintiff also *cannot* prove negligence as a matter of law.

## 5. LEGAL STANDARD FOR THE BANE ACT

Cal. Civil Code § 52.1, known as the Bane Act, authorizes an action against a person who "interferes or attempts to interfere, 'by threat, intimidation, or coercion,' with the exercise or enjoyment by any individual or individuals of rights secured by state or federal law." Plaintiffs must provide proof of "a specific intent to violate [an individual's] right to freedom from unreasonable seizure." *Cornell v. City & Cty. of S.F.* 17 Cal. App. 5th 766, 801–02 (2017); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018); *See also* CACI 3066. Similarly, "the elements of the excessive force claim under § 52.1 are the same as under § 1983." *Chaudry v. Cty. of Los Angeles*, 751 F.3d 1096, 1105-1106 (9th Cir. 2014).

## C. DISCUSSION

## 1. TYPE AND AMOUNT OF FORCE INFLICTED

In determining the objective reasonableness of *non-deadly uses of force*, first the Court must assess the gravity of the particular intrusion on Fourth Amendment

interests by evaluating: 1) The type, and 2) the amount of force inflicted. *Koistra*, 310 F. Supp. 3d at 1076–77 (S.D. Cal. 2018).

Here, it is well-established that handcuffs are a "minimal" use of force that police officers *are* entitled to employ under the circumstances facing Defendants. *Allen*, 66 F.3d at 1056 (9th Cir. 1995) *citing United States v. Jacobs*, 17 F.2d at 1345 - 46 (9th Cir. 1983); *Robinson*, 278 F.3d at 1013 (9th Cir. 2002); *Davis* 290 F. App'x at 37 (9th Cir. 2008) (handcuffing of suspects not excessive force; handcuffing allowed until suspects determined not to pose a threat);  *Meredith* 342 F.3d at 1062 (9th Circ. 2003)("use of handcuffs was justified during a *Terry* stop to ensure officer safety from suspected violent criminals and to prevent their escape.")

It is also undisputed that the only force Defendant Pawluk used was handcuffing Mr. Wear and minimal force to prevent Mr. Wear's continued attempts to escape, and Deputy De Casas used none. **SSUMF #30-60** Thus, the aforementioned factor favors summary judgment in Defendants' favor.

## 2. <u>IMPORTANCE OF GOVERNMENT INTERESTS AT STAKE</u>

Next, courts assess the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Lowry*, 858 F.3d at 1256 (9th Cir. 2017); *Koistra*, 310 F. Supp. 3d at 1076–77 (S.D. Cal. 2018). Here, all three factors weigh in Defendant's favor.

Reasonable suspicion" to detain is an objectively reasonable belief based on specific and articulable facts, such as those mentioned above. *Terry*, 392 U.S. at 23-27 (1968) "Reasonable suspicion" is further defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir.2013). In *Graham*, the U.S. Supreme Court stated it "has long recognized that the right to make an arrest

or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 at 1871-72 (1989).

Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) citing *United States v. Jacobs*, 17 F.2d 1343, 1345 - 46 (9th Cir. 1983). Further, police officers are not required to utilize the least intrusive means when conducting a stop. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

Here, the undisputed facts that Defendants had reasonable suspicion to detain and probable cause to assist the U.S Postal Service officers and arrest Mr. Wear for various crimes, the least of which was P.C. 148 resisting, obstructing, and/or delaying the U.S. Postal Service Officers and Defendants, especially Mr. Wear's *kidnapping and attempt to throw a child into oncoming traffic*, Mr. Wear undisputedly posed an immediate threat to the safety of Defendants and others, and, was actively resisting arrest or attempting to evade arrest. **SSUMF #3-60.**

### 3. BALANCE BETWEEN 'THE GRAVITY OF THE INTRUSION ON THE INDIVIDUAL' AND 'THE GOVERNMENT'S NEED FOR THAT INTRUSION

Here for the reasons previously discussed, the "gravity of the intrusion" on Mr. Wear was minimal, and the need for that intrusion was great. **SSUMF #3-60.** Accordingly, this factor also favors summary judgment.  Here, the evidence establishes that Defendants' *did not* cause Mr. Wear's death from methamphetamine toxicity or otherwise, which defeats Plaintiff's required element of causation. **SSUMF #71-141.** Here, the undisputed facts establish that Defendant deputies Pawluk and De Casa's conduct did not violate Plaintiff's substantive due process rights by acting with a purpose to harm unrelated to a legitimate law-enforcement objective, i.e. to detain or arrest Mr. Wear, or with deliberate indifference, and Plaintiff has no evidence of such.

### 4. **PLAINTIFF CANNOT PROVE THAT DEFENDANT PAWLUK'S CONDUCT CAUSED MR. WEAR'S DEATH**

Here, Plaintiffs fails to present sufficient, admissible evidence to any reasonable medical probability that Defendant Pawluk's mere conduct of lawfully handcuffing Mr. Wear directly and proximately caused his death. **SSUMF #71-141;** *See* Ninth Circuit Model Jury Instruction 9.2 ("Causation"); Jones v. Ortho Pharm. Corp. (1985) 163 Cal.App.3d 396, 402–403("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based [on] competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case… A possibility cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury."); Jennings v. Palomar Pomerado Health Sys., Inc., 114 Cal. App. 4th 1108, 1118 (2003); Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 857.

Here, Los Angeles County Coroner Department Deputy Medical Examiner Matthew D. Miller, MD ("Dr. Miller") conducted Mr. Wear's autopsy, determined that Mr. Wear died of cardiac arrest by "methamphetamine toxicity" resulting in cardiac arrest, revealed no evidence of asphyxia, and revealed no evidence of non-superficial external trauma that caused or contributed to Mr. Wear's death. **SSUMF #70-74** As shown, Dr. Pietruszka's opinions lack foundation and fail to sufficiently establish causation to any reasonable medical probability. **SSUMF#79-141.**

### 5. **PLAINTIFF'S SUBSTANTIVE DUE PROCESS, BATTERY, NEGLIGENCE, AND BANE ACT CLAIMS FAIL**

Here, the evidence establishes that Defendants are entitled to qualified immunity and/or summary judgment/adjudication as a matter of law against Plaintiff's remaining claims for substantive due process, battery, Bane Act, and

negligence/wrongful death because Deputy Pawluk's *de minimus* use of force of handcuffing Mr. Wear was reasonable as a matter of law.

Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) citing *United States v. Jacobs*, 17 F.2d 1343, 1345 - 46 (9th Cir. 1983). Again to prevail on a battery claim against a police officer in California, the plaintiff must show that the officer used unreasonable force, and the analysis is identical to the *Graham* § 1983 reasonableness analysis. *Munoz* 120 Cal. App. 4th at 1102 (2004); *Avina* 681 F.3d at 1131 (9th Cir. 2012) *Edson* 63 Cal. App. 4th at 1273, (1998); *See also* CACI 1305.

Regarding substantive due process, "[*i*]*t is well settled that negligence is not sufficient to shock the conscience*," and that "*a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power*." *Camuglia,* 448 F.3d at 1222 (10th Cir. 2006)(*Emphasis added*).

Regarding negligence/wrongful death, if an officer's conduct "falls *within the range of conduct* that is reasonable under the circumstances, *there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm* and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Brown* (2009) 171 Cal.App.4th at 537–538; *Hayes* 57 Cal. 4th at 632 (2013). Regarding the Bane Act, Plaintiffs must provide proof of an *unlawful* "specific intent to violate [an individual's] right to freedom from unreasonable seizure." *Cornell* 17 Cal. App. 5th at 801–02 (2017); *Reese*, 888 F.3d at 1043 (9th Cir. 2018); *See also* CACI 3066. Similarly, "the elements of the excessive force claim under § 52.1 are the same as under § 1983," meaning reasonable force defeats such a claim. *Chaudry*, 751 F.3d at 1105-1106 (9th Cir. 2014).

Here, the aforementioned facts establish that Deputy Pawluk used had a right to use the *de minimus* force of handcuffing Mr. Wear to effectuate such and overcome his continuing active resistance. **SSUMF #3-60.** Here, the undisputed facts also establish that Defendants' *did not* cause Mr. Wear's death from methamphetamine toxicity or otherwise, and Plaintiff lacks sufficient evidence of the same to any reasonable medical probability, which defeats Plaintiff's required element of causation required for all claims. **SSUMF #70-149**

## V.   <u>CONCLUSION</u>

Based on the foregoing and despite the tragedy of this incident, Defendants respectfully request that this Court grant the instant motion in its entirety.

Date: December 13, 2021

**IVIE McNEILL WYATT PURCELL & DIGGS, APLC**

**By:**   */s/ Antonio K. Kizzie*_____
**RICKEY IVIE**
**DAVIDA M. FRIEMAN**
**ANTONIO K. KIZZIE**
Attorneys for Defendants,
County of Los Angeles, Deputy
Jonathan Pawluk, and Deputy Adrian
De Casas

## DECLARATION OF ANTONIO K. KIZZIE

I, **ANTONIO K. KIZZIE,** the undersigned, declare as follows:

1.      I am an attorney at law duly licensed and admitted to practice before all courts of the State of California, in the United States District Court for the Central, Northern, Eastern and Southern Districts of California, United States District Court of Colorado, the District of Columbia Court of Appeals, the United States District Court of the District of Columbia, and the United States Supreme Court. I am a senior associate with the law firm of Ivie, McNeill & Wyatt, attorneys of record for Defendants COUNTY OF LOS ANGELES, DEPUTY JONATHAN PAWLUK, AND DEPUTY ADRIAN DE CASAS in this case. The foregoing facts are within my personal knowledge and, if called as a witness herein, I can and will competently testify thereto.

2.      This declaration is made in support of Defendant COUNTY OF LOS ANGELES' First Amended Motion for Summary Judgment or in the alternative Adjudication.

3.      This Motion is made following telephonic and meet and confer efforts regarding the substance of this motion on January 25 and 28, 2021 due to the COVID-19 pandemic with Plaintiff's counsel, Mr. Jerry Steering and Peter Carr, pursuant to Local Rule 7-3. As a courtesy, I also attempted to meet and confer again on December 8 and 9, 2021. Plaintiffs will oppose this motion.

4.      A true and correct copy of Deputy Jonathan Pawulk's Declaration in Support of Defendants' Motion for Summary Judgment is attached hereto as **Exhibit A**.

5.      A true and correct copy of a photograph of Deputy Jonathan Pawulk on the date of the incident is attached hereto as **Exhibit B**.

6.      A true and correct copy of a photograph of the U.S. Postal Service Officers on the date of the incident are attached hereto as **Exhibit C**.

7.     A true and correct copy of Defendants' Initial Disclosures is attached hereto as **Exhibit D**.

8.     True and correct copies of excerpts of the deposition transcript of Los Angeles County Coroner's Office Deputy Medical Examiner Matthew D. Miller, M.D. are attached hereto as **Exhibit E,** collectively.

9.     True and correct copies of excerpts of the deposition transcript of Mr. Carlos Davis are attached hereto as **Exhibit F,** collectively.

10.     True and correct copies of excerpts of the deposition transcript of LAPD Officer William Newton are attached hereto as **Exhibit G,** collectively.

11.     True and correct copies of excerpts of the deposition transcript of Mr. Mario Palacios are attached hereto as **Exhibit H,** collectively.

12.     True and correct copies of excerpts of Plaintiff ICW's Fourth Amended Complaint are attached hereto as **Exhibit I,** collectively.

13.     The Court's May 6, 2020 "Order re: Scheduling Dates" is attached hereto as **Exhibit J.**

14.     True and correct copies of excerpts of Plaintiff I.C.W.'s Responses to Defendant County of Los Angeles Requests for Admission, Set One No. are attached hereto as **Exhibit K**, collectively.

15.     True and correct copies of excerpts of Plaintiff's Heather Blanchard's deposition are attached hereto as **Exhibit L**, collectively.

16.     True and correct copies of excerpts of Plaintiff Donelle Wear's Responses to Defendant County of Los Angeles Requests for Admission, Set One No. are attached hereto as **Exhibit M**, collectively.

///

///

///

///

17.     True and correct copies of excerpts of the Declaration and deposition of Dr. Marvin Pietruszka are attached hereto as **Exhibit N**, collectively.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of December, 2021, at Los Angeles, California.

_/s/ Antonio K. Kizzie_
Antonio K. Kizzie, Declarant